IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
EASTERN DIVISION

| | | |
|---|---|---|
| **JUDITH A. COCHRAN** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | **CV-10-BE-2307-E** |
| | ) | |
| **MICHAEL J. ASTRUE,** | ) | |
| **Commissioner of the Social** | ) | |
| **Security Administration,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |

**MEMORANDUM OPINION**

**I. INTRODUCTION**

On May 31, 2007, Plaintiff Judith A. Cochran ("claimant"), applied for disability insurance benefits under Title II of the Social Security Act. (R. 8). The claimant alleges disability beginning on April 6, 2007, because of osteoarthritis of the hands and feet, sarcoidosis, cervical disc disease, dry eye syndrome, carpal tunnel syndrome, vertigo, and mitral valve prolapse. (R. at 10). The Social Security Administration denied the claim initially. As a result, the claimant filed a written request for hearing on July 24, 2007. The Administrative Law Judge, Jerry M. Lang, held a video hearing on September 8, 2009. (R. at 1). In a decision dated October 5, 2009, the ALJ found that the claimant was not disabled as defined by the Social Security Act. (R. at 15). On June 25, 2010, the Appeals Council denied the claimant's request for review. Consequently, the ALJ's decision became the final decision of the Commissioner of the SSA. (R. at 1). Because the claimant has exhausted her administrative remedies, the case is now ripe for judicial review. This court has jurisdiction pursuant to 42 U.S.C. §§ 405(g) and 1382(c)(3). For the reasons stated

below, this court affirms the Commissioner's decision.

## II. ISSUES PRESENTED

In this appeal, the claimant raises two issues for discussion. The first issue is whether the ALJ properly evaluated the credibility of the claimant's testimony regarding subjective, disabling symptoms consistent with the Eleventh Circuit's pain standard. The second issue is whether the ALJ properly considered the combined effects of the claimant's multiple impairments.

## III. STANDARD OF REVIEW

The standard for reviewing the Commissioner's decision is limited. This court must affirm the Commissioner's decision if the Commissioner applied the correct legal standards and if substantial evidence supports the factual conclusions. *See* 42 U.S.C. § 405(g); *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997); *Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987).

This court does not reweigh evidence or substitute its judgment for that of the Commissioner, but instead reviews the entire record to determine if the decision reached is reasonable and supported by substantial evidence. *Cornelius v. Sullivan*, 936 F.2d 1143, 1145 (11th Cir. 1991); *Hillsman v. Bowen*, 804 F.2d 1179, 1180 (11th Cir. 1986) (finding that a reviewing court must look not only to those parts of the record that support the decision of the ALJ, but also must view the record in its entirety and take account of evidence that detracts from the evidence relied on by the ALJ). Also, the Commissioner's legal conclusions, including the "determination of the proper standards to be applied in evaluating claims," are not presumed to be valid. *Walker*, 826 F.2d at 999.

Substantial evidence is such relevant evidence as a reasonable mind might accept as

adequate to support a conclusion. *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001); *see also Falge v. Apfel*, 150 F.3d 1320, 1322 (11th Cir. 1998). In other words, substantial evidence is "more than a mere scintilla." *Falge*, 150 F.3d at 1322.

### IV. LEGAL STANDARD

Under 42 U.S.C. § 423(d)(1)(A), a person is entitled to disability benefits when the person cannot "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than [twelve] months." To make this determination, the Commissioner employs a five-step, sequential evaluation process:

> (1) Is the claimant presently unemployed?
> (2) Is the claimant's impairment severe?
> (3) Does the claimant's impairment meet or equal one of the specific impairments set forth in 20 C.F.R. pt. 404, subpt. P, app. 1?
> (4) Is the claimant unable to perform his or her former occupation?
> (5) Is the claimant unable to perform any other work within the economy?
>
> An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability. A negative answer to any question, other than step three, leads to a determination of "not disabled."

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986); 20 C.F.R. §§ 404.1520.

In determining disability, the Commissioner has a duty to consider the impairments in combination and to determine whether the combined impairments render the claimant disabled when several impairments are alleged. *Jones v. Dept. of Health & Human Servs.*, 941 F.2d 1529, 1533 (11th Cir. 1991).

In evaluating pain and other subjective complaints, the Commissioner must consider

whether the claimant demonstrated "an underlying medical condition, and *either* [(1)] objective medical evidence that confirms the severity of the alleged pain arising from that condition *or* [(2)] that the objectively determined medical condition is of such a severity that it can reasonably be expected to give rise to the alleged pain." *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991) (emphasis added); *see also Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002); 20 C.F.R. § 404.1529.

### V. FACTS

At the time of the administrative hearing, the claimant was fifty-four years old with an eleventh grade education. (R. 18). For the past twenty-nine years, the claimant worked as an assembly line supervisor of four employees at International Enterprises. (R. at 18-19, 100, 102). Because of pain in her back, neck, shoulders, and hands, the claimant left her job in April 6, 2007. (R. at 10, 19). The claimant's medical conditions include osteoarthritis of the hands and feet, sarcoidosis, cervical disc disease, dry eye syndrome, carpal tunnel syndrome, vertigo, and mitral valve prolapse. (R. at 10).

*Physical Limitations*

On January 23, 2003, the claimant visited the Anniston Medical Clinic for "muscle and joint pain" located "mostly in the left side." A doctor at the Clinic diagnosed the claimant with joint pain ("arthralgias") and "possibly mild osteoarthritis." (R. at 298). The claimant cancelled her appointment for March 20, 2003, and did not return to the Clinic until more than three years later on March 24, 2006. On that date, Dr. James M. Ready, a treating internist, found the claimant to be "pleasant" and "in no distress." (R. at 299). However, the claimant's X-rays showed "some mild, early osteoarthritic damage in [her] hands and [her] feet." (R. at 297).

On April 13, 2006, the claimant complained of neck and shoulder pain. Over a period of a few months, the claimant rated the pain as high as a nine and as low as a two. Dr. Hishim Hakim, a treating neurologist, also found the claimant's MRI to reveal cervical spondylosis with two bulging discs at C4-C5 and C5-C6. These bulging discs were "impinging *minimally* on the existing nerve root." (emphasis added). Nerve conduction studies indicated that claimant had carpal tunnel syndrome. (R. at 180). As of her May 11, 2006, visit, the claimant's neck and shoulder pain had improved. In addition to an epidural block, she responded "favorably" to therapy. (R. at 179). On June 8, 2006, Dr. Hakim again noted the claimant's favorable response to physical therapy and another epidural block. (R. at 178). Although the claimant still complained of neck and shoulder pain on July 5, 2006, Dr. Hakim found her situation to be "overall better." Although the claimant stopped Mobic, a prescription pain reliever, because of a side effect of rectal bleeding, Dr. Hakim did not prescribe any other pain medication. (R. at 176). By September 7, 2006, the claimant again "responded very favorably" to her therapy. The claimant's pain was "very minimal." Although the record is unclear as to what medications she was taking at that time, the claimant stopped taking her medication as well. (R. at 177).

Even so, the claimant asserts that her condition "deteriorated to the point" where "she was unable to work" by April 2007. Pl.'s Br. 6. On June 6, 2007, Dr. Ready noted the appearance of "several developments" since the claimant's last visit. The main development was the emergence of peptic ulcer disease. Because of her recent condition, the claimant stopped taking Ibuprofen and Glucosamine which, in turn, triggered her joint pain. Dr. Ready switched the medication to Tylenol Arthritis and continued Glucosamine to assist with the claimant's joint pain. Although claimant again complained of shoulder, hip, and knee problems, Dr. Ready found

her musculoskeletal exam to be "fairly benign." In that examination, the claimant's hands and wrists showed "no activity" and a good gripping ability, while her elbows and shoulders demonstrated "good motion." Dr. Ready's diagnoses consisted of osteoarthritis and degenerative disc disease. (R. at 297).

On June 14, 2007, SSA Field Office Representative C. Fluker interviewed the claimant face-to-face. (R. at 82-83). During the interview, Representative Fluker noticed that claimant demonstrated "no observable difficulties/impairments" and that she "was able to sit during the entire 66 [sic] min[ute] interview [without] any obvious discomfort." (R. at 84). She also observed claimant to have no cognitive or physical difficulties.[1] (R. at 83).

Furthermore, the State agency medical consultant, Dr. Richard Whitney, examined the claimant on July 15, 2007. (R. at 338). He also noted no severe impairments. (R. at 14). He noted that claimant's one episode of vertigo had not recurred. (R. at 338). He found no evidence of recent carpal tunnel syndrome issues and no diagnoses of fibromyalgia or asthma. He also found the claimant's orthopedic exam for joint pain "normal" and noted that the claimant used over-the-counter medication. (R. at 14).

*The ALJ Hearing*

After the SSA denied the claimant's request for disability and disability insurance benefits, the claimant requested and received a hearing before an ALJ. (R. at 8). At the hearing, the claimant testified that she experienced pain in her shoulders, neck, hips, right hand, and sometimes her knee. (R. at 19). In response to the intensity of her pain problems, the claimant

---

[1] Within the report, Representative Fluker noted, "No" for difficulties regarding hearing, reading, breathing, understanding, coherency, concentrating, talking, answering, sitting, standing, walking, seeing, using hand(s), and writing.

responded, "Sometimes it's worse, and sometimes I can function better during the day." She further added that four or five weeks out of the year, she "[does not] do much of anything." The claimant testified that two epidural pain blocks have helped. (R. at 20).

The claimant testified that if she stands more than thirty minutes at a time, she starts to have "pains and problems" in her legs and hips. On a normal day, the claimant adds that she spends "probably half of the day" in her recliner because of pain and "being overly tired." When the claimant sits too long, she testified that she is "really stiff and achy" especially in the hips and right knee. She indicated that she can walk about a "good block without pain." (R. at 21). As of June 25, 2007, the claimant also explained that she can do "limited" household, grocery, and clothes shopping. (R. at 114).

Dr. William Crunk, a vocational expert, testified about the claimant's past relevant work and confirmed the claimant's job as a supervisor in the assembly and repair of electronics. Dr. Crunk characterized the work as "light" and "skilled with an SVP of seven." The ALJ then questioned Dr. Crunk regarding the "non-exertional demands of that sort of work." Dr. Crunk testified that a person "would have to be able to certainly handle customary levels of stress on the job." As a supervisor, he or she would need to "deal[] with other people" and maintain good relationships, as well as instruct others in job performance. Dr. Crunk added that the claimant's job needed a "high level of functioning" where concentration and attention to detail were important. (R. at 23).

Dr. Crunk then testified regarding the significance of the claimant being absent four or five weeks in a year and the need to be reclined for half of the day on the claimant's ability to work. Assuming the ALJ credited the claimant's testimony, Dr. Crunk stated that the claimant

would "be unable to work." (R. at 24).

*The ALJ's Decision*

On October 5, 2009, the ALJ issued a decision finding no disability. (R. at 15). At step one of the sequential evaluation process, the ALJ found that the claimant had not engaged in substantial gainful activity since the alleged onset of her disability. At step two, the ALJ found the claimant's medically determinable impairments to be osteoarthritis of the hands and feet, sarcoidosis, cervical disc disease, dry eye syndrome, carpal tunnel syndrome, vertigo, and mitral valve prolapse. However, the ALJ determined that those impairments were not severe, either individually or in combination. (R. at 10). Because the ALJ found that those impairments did not significantly limit the claimant's ability to perform basic work activities for twelve consecutive months, he found no disability. (R. at 10-11, 14-15).

## VI. DISCUSSION

The claimant challenges the ALJ's determination on two grounds. The first issue is whether the ALJ properly evaluated the credibility of the claimant's testimony regarding subjective, disabling symptoms consistent with the Eleventh Circuit's pain standard. The second issue is whether the ALJ properly considered the combined effects of the claimant's multiple impairments. This court finds that the ALJ properly applied the Eleventh Circuit's pain standard and that substantial evidence supports his decision. This court also finds that the ALJ properly considered the effects of the claimant's multiple impairments. Thus, this court affirms the Commissioner's decision.

**A.    The ALJ Properly Evaluated the Credibility of the Claimant's Testimony Regarding Subjective, Disabling Symptoms Consistent with the Eleventh Circuit's Pain Standard.**

At the second step of the sequential evaluation, the claimant bears the burden of proving that she has a severe impairment. *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999). "An impairment . . . is not severe if it does not significantly limit [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1521(a); *see also Crayton v. Callahan*, 120 F.3d 1217, 1219 (11th Cir. 1997). The impairment must last or be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 423(d)(1)(A).

A three-part "pain standard" applies when a claimant attempts to establish disability through her own testimony of pain or other subjective symptoms. *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991). The Eleventh Circuit pain standard "requires (1) evidence of an underlying medical condition and *either* (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition *or* (3) that the objectively determined medical condition is of such a severity that it can reasonably be expected to give rise to the alleged pain." *Holt*, 921 F.2d at 1223 (emphasis added); *see also Wilson*, 284 F.3d at 1225; 20 C.F.R. § 404.1529.

A reversal is warranted if the ALJ's decision contains no evidence of the proper application of the three-part standard. *Holt*, 921 F.2d at 1223; *see also Brown v. Sullivan*, 921 F.2d 1233, 1236 (11th Cir. 1991). The claimant's subjective testimony supported by medical evidence that satisfies the pain standard is itself sufficient to support a finding of disability. *Foote v. Chater*, 67 F.3d 1553, 1561 (11th Cir. 1995).

Once the ALJ establishes an impairment, he must consider all the evidence about the

intensity, persistence, and functionally limiting effects of pain or other symptoms in addition to the medical signs and laboratory findings. *Foote*, 67 F.3d at 1561. The ALJ's credibility determination must be more than a broad rejection of the claimant's subjective complaints of pain. *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005). It must be explicit enough for a reviewing court to conclude that the ALJ considered the claimant's medical condition as a whole. *Dyer*, 395 F.3d at 1210. If the Commissioner decides not to credit a claimant's subjective testimony of pain, he must discredit it explicitly and articulate his reasons for doing so. *Brown*, 921 F.2d at 1236. Failure to articulate the reasons for discrediting the claimant's subjective complaints of pain requires that the testimony be accepted as true. *Brown*, 921 F.2d at 1236.

Under the first step of the Eleventh Circuit's pain standard, the ALJ found that the claimant demonstrated an underlying medical condition, namely osteoarthritis of the hands and feet, sarcoidosis, cervical disc disease, dry eye syndrome, carpal tunnel syndrome, vertigo, and mitral valve prolapse (R. 10).

Under the second step of the Eleventh Circuit's pain standard, the ALJ found that the claimant's medically determinable impairments could reasonably be expected to produce the alleged symptoms. However, the ALJ found that the entirety of the medical evidence failed to support the claimant's alleged severity of pain and specified those reasons as discussed below. (R. at 11).

The claimant contends that "it is very reasonable that [her] osteoarthritis worsened by April 2007 to the point that it significantly impacted her ability to do basis [sic] work activities." Pl.'s Br. 7. At her hearing, she complained of pain in her shoulders, neck, right hip, right hand, and right knee. However, the ALJ's thorough investigation of her clinical examinations and

diagnostic studies did not reveal signs or findings indicating that her condition would have interfered with her ability to perform basic work activities. (R. 11-14, 19-22).

Specifically, the ALJ noted several inconsistencies and findings. Nerve conduction studies suggested only a slight decrease in hand grip. (R. at 12). While claimant had some mild, early osteoarthritic damage in her hands and feet before her onset date (R. at 297), her musculoskeletal and neurological exam did not suggest any debilitating impact. (R. at 12, 297, 305).

Despite the claimant's assertion that the onset of her disability occurred on April 6, 2007, she did not visit a doctor until two months later on June 5, 2007. (R. at 12). Dr. Ready found that the claimant "was doing pretty well on over the counter Ibuprofen and Glucosamine." (R. at 12, 297). In addition to "mild" symptoms that "only minimally impact work activity," the ALJ reasoned that the claimant's ability to obtain relief from over-the-counter medication was "incompatible with the incapacitating joint pain she allege[d]." The ALJ further noted the absence of laboratory evidence or other pathology that could produce the claimant's alleged chronic incapacitating or even severe musculoskeletal pain. (R. at 12).

The ALJ also explained that the claimant's "reported daily activities . . . are not indicative of the incapacitating symptoms alleged." The claimant cooks, shops, and does some laundry. The ALJ further stressed that treating physicians noted that the claimant was in no distress or no apparent distress during her visits. (R. at 14). While the claimant does properly point out that the ALJ cited to the wrong exhibit (Pl.'s Br. 8), the distinction is not important because the activities listed are those which the claimant lists after her onset date. (R. at 109-17).

The claimant's contention "that [her] osteoarthritis worsened by April 2007" is not

supported by the record as articulated by the ALJ. As demonstrated above, substantial evidence supports the ALJ's finding.

**B.     The ALJ Properly Considered the Combined Effects of the Claimant's Multiple Impairments.**

The claimant's second contention is that the ALJ did not properly consider the combined effects of her multiple impairments. Where a claimant has alleged several impairments, the Commissioner has a duty to consider the impairments in combination to determine whether the combined impairments render the claimant disabled. *Jones v. Dept. of Health & Human Servs.*, 941 F.2d 1529, 1533 (11th Cir. 1991). In such instances, the ALJ's duty is to "make specific and well-articulated findings as to the effect of the combination of impairments." *Bowen v. Heckler*, 748 F.2d 629, 635 (11th Cir. 1984).

The ALJ considered the cumulative effect of the claimant's impairments when assessing whether her impairments were "severe." An ALJ's statement that the claimant "'did not have an impairment *or combination of impairments*' . . . constitutes evidence that [the ALJ] considered the combined effects of [the claimant's] impairments." *Wilson*, 284 F.3d at 1224. The ALJ's decision contains multiple statements that he considered the impairments in combination:

> 1) "The claimant does not have an impairment or ***combination of impairments*** that has significantly limited (or is expected to significantly limit) the ability to perform basic work-related activities for 12 consecutive months; therefore, the claimant does not have a severe impairment or ***combination of impairments***."

(R. 10) (emphasis added).

> 2) "In reaching the conclusion that the claimant does not have an impairment or ***combination of impairments*** that significantly limits her ability to perform basic work activities, the undersigned has considered all symptoms and the extent to which these symptoms can

> be reasonably accepted as consistent with the objective medical evidence and other evidence."
>
> 3) "[T]he claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with finding that the claimant has no severe impairment or ***combination of impairments*** for the reasons explained below."

(R. at 11) (emphasis added).

> 4) "In sum, the conclusion that the claimant does not have an impairment or ***combination of impairments*** that significantly limits her ability to perform basic work activities is supported by the minimal findings . . ."

(R. at 14) (emphasis added).

Therefore, the ALJ's opinion sufficiently indicates that the ALJ properly considered the cumulative effect of the claimant's impairments.

A separate question arises as to whether the ALJ failed to properly set forth "specific and well-articulated findings as to the effect of the combination" of the claimant's impairments. *See Walker*, 826 F.2d at 1001. The Eleventh Circuit has not clarified the "specific and well-articulated" standard set forth in *Walker. Williams v. Barnhart*, 186 F.Supp. 2d. 1192, 1199 (M.D. Ala. 2002) ("The Court of Appeals, however, has never defined 'well-articulated findings' or otherwise stated how much more analysis is required"). The Middle District of Alabama, wrestling with similar questions, suggested in *Williams* that

> as a baseline consideration, *Walker* requires the ALJ in his analysis or findings at least to *mention* all of the claimant's individual impairments. It further appears that, in support of his ultimate conclusion . . . that the combination of impairments does not render the claimant disabled, the ALJ should engage in a pairing analysis which juxtaposes single impairments one with another, to determine whether or not, as an aggregate, they produce a cognizable disability.

13

*Williams*, 186 F.Supp. 2d. at 1200.

In the instant case, the claimant's impairments–osteoarthritis of the hands and feet, sarcoidosis, cervical disc disease, dry eye syndrome, carpal tunnel syndrome, vertigo, and mitral valve prolapse–are mentioned in the ALJ's opinion. (R. 11-14). The "pairing analysis" called for by the Middle District, in which "single impairments" are juxtaposed "one with another," is easily satisfied in the instant case. The ALJ's decision indicates that he considered them together in determining "whether or not, as an aggregate, they produce a cognizable disability." *Williams*, 186 F. Supp. 2d at 1200. After explaining why the other impairments were not "severe," the ALJ stated:

> In sum, the conclusion that the claimant does not have an impairment or combination of impairments that significantly limits her ability to perform basic work activities is supported by the minimal findings during MRIs, X-rays, and CTs, the multiple physical examinations with normal findings, and the absence of convincing testimony.

(R. 14).

Thus, the ALJ's findings are sufficiently "specific and well-articulated" to satisfy *Walker*'s vague prescriptions. The ALJ properly considered the claimant's multiple impairments and found that the claim was not disabled.

## VII. CONCLUSION

The court has carefully reviewed the entire record in this case and finds that the Commissioner's decision is supported by substantial evidence and that the Commissioner applied proper legal standards in reaching that decision. Accordingly, the decision of the Commissioner is affirmed.

A separate Order in conformity with this memorandum opinion will be entered.

DONE and ORDERED this 25th day of July 2011.

                                                   _/s/ Karon O. Bowdre_
                                                   KARON OWEN BOWDRE
                                                   UNITED STATES DISTRICT JUDGE